THE FERN HOLME.

*(District Court, D. New Jersey. July 17, 1885.)*

1. CARRIERS OF GOODS BY WATER—DAMAGE TO CARGO—IMPROPER STOWAGE.
   On the evidence in this case, it cannot be said that the damage to the cargo was caused by improper stowage, and was not the result of the rough weather experienced on the voyage.

2. SAME—DELIVERY—SHORTAGE—EVIDENCE—BILL OF LADING.
   When the bill of lading acknowledges the receipt of 514 bags of canary-seed, "weight, contents, and value" unknown, it will require more than naked proof that a weigher found some of the bags a few pounds short in weight to hold the vessel responsible for the shortage.

*S. B. Ransom,* for libelant.

*Lorenzo Ullo,* for respondent.

NIXON, J. On the eighteenth of December, 1883, W. H. Cole & Co. shipped on board the steamer Fern Holme, at the port of Liverpool, England, 514 bags of canary-seed for the port of New York. The merchandise reached its destination, and the libelants in this case, who were the consignees, received notice of its arrival on the seventh of January, 1884. The freight was duly paid and the delivery of the cargo demanded. It was landed from the steamer onto the dock at pier No. 43, North river, when it was discovered that a number of the bags containing the seed were soiled by coming into contact with a Venetian red powder, which composed a part of the freight, in barrels, and which from some cause had escaped from the barrels during the voyage, causing the damage to the sacks. The libel alleges that the injury arose from careless and improper stowage, and demands damages, not only for that injury, but because the respondents refused, for the period of eight days after the freight was paid, to make delivery of the seed to the consignees, whereby a loss accrued to the consignees from a decline in the price, and also for a shortage of 386 pounds in the amount of seed subsequently delivered. The answer denies these allegations, and they are the only issues which are raised by the pleadings.

It appears from the evidence that as soon as the consignees were

advised of the arrival of the seed they authorized their brokers, Kraus & Stettin, to sell the same on their account; that a written contract was entered into by them with McKesson & Robbins for the sale of the whole importation at two and three-fourths cents per pound, alleging the same "to be of good merchantable quality; to be approved of on the dock; sound bags only to be taken; stained or damaged, if any, to be rejected;" that draymen were sent to the dock to take the delivery of the seed; and that a controversy arose between the employes of the respective parties as to the nature of the receipt which should be demanded and given upon its delivery,—the respondents being understood to insist that they should be receipted for as in good order, and the libelants as wholly damaged. A long correspondence between the principals, causing a delay of more than a week, ensued before the parties could ascertain what the real trouble was. They then found out that both parties were willing that the receipts taken and given should describe the merchandise according to the actual condition of the packages.

I should have no difficulty about the rules and principles on which the suit is to be decided, if I could find out what the facts were. I am bound to say that, after several years' experience in admiralty proceedings, I have never known a case where the testimony was more unsatisfactory on the material points. Before the libelants can recover damages for injuries caused by improper stowage, they must proved that it existed. It is sometimes to be inferred from the circumstances. But it ought not to be inferred in the present case that two or three barrels of Venetian red broke open, scattering the powder over other merchandise, from not being properly stowed, in view of the testimony of the captain that he had the most stormy voyage which he had experienced for 15 years, and that the damage arose from the rough weather and the heavy laboring of the ship. The bill of lading exempted the vessel from all responsibility for losses arising from perils of the sea. The evidence also warrants the judgment that the delay in getting delivery of the cargo arose from a claim of the libelants' men that the seed should be receipted for as damaged, when they were not entitled to demand more than a receipt describing the actual condition of the packages. The bill of lading acknowledges the receipt of 514 bags of canary-seed, "weight, contents, and value unknown." The whole number of the bags was duly delivered. It will require something more than naked proof that a weigher found some of the bags a few pounds short in weight, to hold the steam-ship responsible for the shortage.

The libelant has failed to establish his claim by the proofs, and the libel must be dismissed, with costs.