## THE WILLIAM I. McILROY et al.
## THE HENRY F. WILL.  THE BOUKER
### H–86.

District Court, E. D. New York.  February 3, 1930.

Nos. 9817, 10815.

Alexander & Ash, of New York City (Edward Ash, of New York City, and Irving Landman, of New York City, of counsel), for Burns Bros.

Macklin, Brown, Lenahan & Speer, of New York City (Edmund F. Lamb, of New York City, of counsel), for Charles Jensen.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Prizer and Joseph M. Brush, both of New York City, of counsel), for the Henry F. Will.

Foley & Martin, of New York City (James A. Martin, of New York City, of counsel), for Bouker Contracting Co.

GALSTON, District Judge.  On October 7, 1916, the barge William I. McIlroy, owned by Charles Jensen, was loaded with 689.19 tons of coal at Edgewater, N. J.  The coal was consigned to Burns Bros. to be delivered at the coal dock of Burns Bros. at Newtown Creek, Long Island.  The barge was towed to Dupont street along Newtown creek.  It was customary for these loaded boats with cargoes consigned to Burns Bros. to tie up anywhere along the creek, after which, by a small tug, they would be towed up the creek to the Burns Bros. dock.

While at Dupont street the coal barge sank.  The captain in charge of the barge is dead, and there is no direct testimony as to any collision or as to any unseaworthiness which caused the sinking.  But when the boat was raised on October 26th, having sunk on October 17th, and her condition observed and a survey made, it appeared that the sinking was occasioned wholly by the piercing of the stern of respondent's barge by a board of 4 by 12 white pine timber, 5 feet long.  It is true that the surveyor found some slight damage at the bow, but that could not account for the sinking.  There was also one plank on the bottom found damaged, but that could not account for the sinking; rather, it is probable that that condition arose from the raising of the boat.

How, when, and where the 4 by 12 deal was driven through the stern of the William I. McIlroy, so far as the record discloses, remain a mystery.  There was no eyewitness who testified.  The captain of the barge is dead.  The libel brought by Jensen was in consequence practically abandoned at the trial, and the only issue remaining is between Burns Bros., consignee of the coal, and the coal boat and its owner.

The libelant alleges the delivery of the coal to the boat, the loss of the coal, and the damage sustained; also, that the sinking of

the boat was brought about through the want of care and negligence of the coal boat and her owner. The answer denies any negligence on the part of the coal boat or its owner. In these circumstances, the critical issue is where the burden of proof lies.

What was the relationship between the parties? Libelant argues that the barge was a common carrier; claimant and respondent argue that the owner of the barge was merely a bailee. Libelant contends that because a bill of lading was issued the barge became a common carrier. As to that it is significant that the so-called bill of lading is hardly more than a shipper's receipt. It is not a form prepared by the vessel. It was provided by the owners of the cargo. But more significant still is the fact that the coal was the only cargo carried.

In The C. R. Sheffer (C. C. A.) 249 F. 600, 601, it was held that where the consignee was given the full capacity of the scow, her owners were not common but private carriers, i. e., bailees, to transport for hire.

I believe, therefore, that the owner of the scow William I. McIlroy was not a common carrier but a bailee to transport for hire.

If that is so, then the libelant must affirmatively show negligence to recover for loss of cargo. In the Sheffer Case it was said: "A private carrier, like other bailees for hire, is only bound to the exercise of ordinary care and skill—the reasonable skill of his calling." See also The Rokeby (D. C.) 202 F. 322; The Oakley C. Curtis (C. C. A.) 4 F.(2d) 979.

Now it may be that the failure to deliver the coal raises a presumption of negligence. If that is so, the presumption is met in the present instance by the proof of the original seaworthiness of the vessel. She was examined by her owner only two weeks before the sinking. At that time she was in good condition. He examined her forward, stern, and sides. She had been carrying cargo right along and there never had been any claim for loss of cargo. The sinking, therefore, could not be a basis for an inference of unseaworthiness.

Thus the burden of going on with the proof of negligence shifted back to the libelant. The libelant proved nothing. The boat, therefore, having been proved seaworthy by the respondent, and the libelant having failed to prove affirmatively or otherwise either unseaworthiness or negligence, the libel against the coal boat William I. McIlroy and her owner should be dismissed.

Another ground for dismissal is urged, and I think validly. The shipping receipt or bill of lading excepts liability for dangers of the seas. Even if this bill of lading were given by a common carrier, the vessel would not be held responsible unless the libelant could show affirmatively that the ship was guilty of such negligence as would preclude setting up the exceptions in the bill of lading. The Breedijk (D. C.) 22 F.(2d) 328; The Thomas P. Beal (C. C. A.) 11 F.(2d) 49; Clark v. Barnwell, 12 How. (53 U. S.) 272, 13 L. Ed. 985.

The libelant argues, however, that merely because the deal was found driven through the stern of the barge on October 27th raises no presumption that that was the cause of the sinking of the coal boat on October 16th. Such argument might be persuasive if it appeared from the condition of the boat when raised that any other cause could have produced the sinking. From the exclusion of all other possible causes, as disclosed by the record, I think that the fairest inference is that the driving of the deal through the stern plank was the cause of the sinking. That being so, it certainly was a peril of the sea and falls within the exception of the bill of lading.

Decrees accordingly may be entered dismissing the libels.