**DUCHE et al. v. THOMAS AND JOHN BROCKLEBANK, Limited, et al.**

No. 199.

Circuit Court of Appeals, Second Circuit.
April 7, 1930.

via Port Sudan, Port Said, Oran, and Boston, for New York. Part of her cargo consisted of one thousand cases of desiccated cocoanut consigned under five bills of lading to the order of the appellants at New York. It was stored in her No. 2 hold. The weather was alternately mild and rough until January 24th when a ten-day period of squalls, strong winds of moderate to fresh gale velocity, reaching hurricane violence on January 30th, were encountered. The ship was subjected to continuous buffeting, from which she frequently took heavy seas fore and aft. Considerable minor damage was done and one seaman fatally injured. On January 29th, in the middle of the afternoon, a huge wave broke over the ship and tore the coaming of the No. 1 starboard ventilator from the deck, ripped off the No. 2 ventilator, allowing sea water to pour into No. 2 hold where the cocoanut was stored, and did considerable damage to railing, doors, and pipe casings. It is claimed that this sea came over the lee side, but the only man who is said to have seen it did not testify, and all the support we find in the record for this claim may be traced to statements made by him. Besides, it is not made apparent, and seemingly could not be, that the force of the wave upon the ship was at all enhanced by its coming over one side rather than the other, although it is true that a different part of the vessel may have for that reason been made to bear the brunt of it. However this may be, it was shown to be a wave of such damaging proportions that not only was one ventilator coaming broken, but another ventilator was pushed up and off its coaming, to say nothing of its other destructive results. We think such uncertain and unpreventable action of the elements falls within the peril of the sea exception to the bill of lading as that phrase is defined in The Rosalia (C. C. A.) 264 F. 285.

True, it is there said of a peril of the sea "that the peril which forms a good exception in a bill of lading means something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety." With this we are quite in accord. This statement, however, did not add to or detract from what had previously been a peril of the sea. One's conception of what is catastrophic may differ from that of another, but the words "so catastrophic" could, of course, be replaced by colorless words like "of such a character" without changing the legal import at all. The law was left as stated in The War-

Harry D. Thirkield, of New York City, for appellants.

Lord, Day & Lord, of New York City (James S. Hemingway, of New York City, of counsel), for respondents.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellees' steamship Makalla left Colombo, Ceylon, in December, 1925, bound,

ren Adams (C. C. A.) 74 F. 413, 415, and The Giulia (C. C. A.) 218 F. 744, 746, which were cited. In The Warren Adams, the definition is: "All marine casualties resulting from the violent action of the elements, as distinguished from their natural, silent influence, upon the fabric of the vessel; casualties which may, and not consequences which must, occur." The definition found in The Giulia is: "Perils of the seas are understood to mean those perils which are peculiar to the sea, and which are of an extraordinary nature or arise from irresistible force or overwhelming power, and which cannot be guarded against by the ordinary exertions of human skill and prudence." A multiplication of definitions will result only in a multiplication of words without serving any useful purpose. The difficult task is not to define in general terms a peril of the sea, but to determine whether some established facts and circumstances, like those proved in this case, fall within a sound definition. There opinions may be at variance and give to close cases little value as precedents. Yet this situation obtains largely throughout the whole administration of justice because it is impossible to do away entirely with the human element in applying the law to the facts.

■ Evidence that the ship was seaworthy in so far as No. 2 port ventilator was concerned is found in the testimony of her captain that all of the ventilators with their coamings were inspected, scaled, and greased under his personal supervision while the ship was making Colombo from Calcutta just previous to its departure from the latter port on this voyage and that they were then in proper condition. He also testified that he examined them again between Colombo and Suez and found them in good condition. The fact that the ventilator did withstand the severity of the wind and waves for upwards of five days without damage to the cargo lends some strength to the captain's testimony, and denotes somewhat, at least, its suitability for the use to which it was put. In view of this, we believe the seaworthiness of the ship on leaving Colombo to have been sufficiently established.

The conclusion we have reached regarding the peril of the sea exception clause in the bill of lading will bar recovery for the damage, and makes it unnecessary to consider anything based on claimed failure to comply with the terms of the bill of lading as to notice of claim for damage before receipt of goods.

Decree affirmed.