**ATLANTIC SUGAR REFINERIES, Limited, v. ROYAL MAIL STEAM PACKET CO.**

**H. E. HODGSON & CO., Limited, v. ROYAL MAIL STEAM PACKET CO.**

Nos. 102, 103.

Circuit Court of Appeals, Second Circuit.

March 2, 1931.

Slayton & Jackson, of New York City (G. Noyes Slayton, of New York City, of counsel), for appellant.

Theodore L. Bailey, of New York City, for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Each.of the foregoing suits is for recovery of damages to cargo carried in respondent's steamship Chaudiere.

In the first suit, where the libel was filed by Atlantic Sugar Refineries, Limited, 13,-500 bags of sugar were laden at Demerara, British Columbia, to be transported to St. John, New Brunswick. Upon discharge at St. John, 232 of the bags were found to be damaged, 106 by contact with sea water, and 126 by contact with molasses and cocoanut oil.

In the second suit, where the libel was filed by H. E. Hodgson & Co., Limited, 25 casks of cocoanut oil and 50 bags of coffee were laden at port of Spain, Trinidad, to be transported to St. John, New Brunswick, and Montreal, Canada, respectively. During the voyage the casks of cocoanut oil were completely broken up, the oil shipped therein became a total loss, and 19 bags of coffee were damaged by contact with molasses and cocoanut oil.

The survey and stowage plan indicate that the sugar damaged by cocoanut oil and molasses was stowed in No. 4 hold, and the sugar wet by sea water was in No. 2 hold. The coffee and casks of cocoanut oil involved in the second suit were stowed in the No. 4 'tween-decks in the same compartment as 249 barrels of molasses.

On March 17, 1926, when the ship was about 300 miles south of Bermuda, she ran into a heavy gale. The wind at one time reached about 60 miles per hour. One of the wire lashings of the deck cargo, which consisted of drums of oil, parted, and the ship had to be hove to in order to secure this cargo. Lifeboats were unhooked from their falls by the high seas, a part of the rails was carried away, steam pipe casings were torn from the hatch coamings, and other minor damage was done. During the storm the cargo in No. 4 'tween-deck broke adrift and the casks of molasses and drums of cocoanut oil stowed in the same compartment with the coffee were smashed. The contents escaped, damaged the coffee, and leaked down into No. 4 hold on the sugar, causing injury to 126 bags. During the same storm sea water came through the rivet holes of the steam pipe casings that passed through the coamings of No. 2 hatch and damaged the sugar in No. 2 hold.

There was testimony that seven months before the storm the ship was examined as to seaworthiness by the government and Lloyds surveyors and received an A-1 classification at Lloyds, that she was overhauled at Demerara before beginning this particular trip, and that at that port the chief officer inspected the 'tween-decks and lower hold and found them in good condition.

The bills of lading contained the usual clauses providing that the shipowner should

not be responsible for loss or damage from perils of the seas, sea water, "leakage, breakage (however caused)," or "contact with * * * other goods." The respondent seeks to avoid liability on the ground that the damage here was from one or more of these excepted causes.

Judge Thacher in the District Court held that the sea water reached the sugar in No. 2 hold because of the breaking away of the steam pipe casings in the storm, and that, because of the exception in the bill of lading against liability for loss from perils of the sea, the carrier was not responsible for this sea water damage. On the other hand, he found that the breakage of the casks of cocoanut oil and the damage to the coffee in No. 4 'tween-deck and to the sugar in No. 4 hold arose from negligent stowage, for which the carrier was liable.

The appellant contends that the libelants have not sustained the burden of proving that the damage was caused by negligent stowage, and insists that it was due to perils of the sea. In the suit by H. E. Hodgson & Co., Limited, appellant further contends that a notice of claim was not given as required by the clause in the bill of lading providing that the shipowner is not to be liable for any claim "notice of which is not given before the removal of the goods."

The libelant in the suit by Atlantic Sugar Refineries, Limited, likewise assigns error because of the rejection of its claim for sea water damage to 106 bags of sugar. It insists that these bags were damaged by water that leaked through defective ports and trimming hatches and not by water that came through the rivet holes of the steam pipe casings which were torn away from the hatch coamings in the storm.

While the master testified that "the cargo was thoroughly dunnaged with wood; the casks were chocked off with quoins," it nevertheless appears from the stowage plan that the coffee, cocoanut oil, and 249 barrels of molasses were placed in the same compartment in No. 4 'tween-decks, and that this compartment was not stowed full, but was only partially occupied. Though casks or barrels of oil and molasses are so likely to leak that the authorities on stowage regard it as better not to place such goods above or in too close proximity to dry cargo, it is not necessary to say that the mere placing of the oil and molasses and the coffee in the same compartment and above the sugar in the lower hold was bad stowage. It is enough to indicate negligent stowage that leaky and relatively dangerous cargo was placed in a partially filled compartment without installing temporary bulkheads. Rough weather was to be expected on the voyage, and corresponding care in stowage was imperative. Shifting and breakage of cargo alone does not necessarily involve an inference of negligence, but here there are combined circumstances which we think do show negligent stowage: (1) Leaky cargo was stowed in the same compartment with coffee and above sugar; the compartment was but partially filled, and lacked temporary bulkheads to prevent shifting in rough seas. (2) There was shifting and general demolition of the casks of oil and barrels of molasses in this particular compartment, though the cargo in other compartments did not go adrift. (3) The testimony of the captain and chief officer in relation to stowage was general, and indicated but slight personal knowledge as to the character of the stowage.

The above circumstances together go much farther in establishing negligence than mere breakage of cargo unaccompanied by anything else, and are, in our opinion, sufficient to take the case out of such a decision as The Fern Holme (D. C.) 24 F. 502. Undoubtedly the damage from oil and molasses prima facie fell within the language of the exceptions either because it was due to a peril of the sea or to "leakage" or "breakage" or to "contact with * * * other goods." Therefore the respondent by its contract is relieved from the ordinary liability of a carrier unless its negligence be proved. In that event it may not take advantage of the exception in the bills of lading. The burden was upon the libelants to establish negligence, but we think they sustained it in respect to the damage caused by oil and molasses. The Florinda (C. C. A.) 31 F.(2d) 262; The Toychashi Maru (D. C.) 13 F.(2d) 871, at page 872; The Bencleuch (C. C. A.) 10 F.(2d) 49; The Isla de Panay (C. C. A.) 292 F. 723, affirmed 267 U. S. 260, 45 S. Ct. 269, 69 L. Ed. 603.

It is argued that the storm was a very bad one and that no ordinarily careful stowage would withstand it. But the deck cargo held in spite of the breaking of the lashings which had to be replaced, and the damage to the hull and equipment of the ship was so unimportant that no repairs were made at Bermuda and those at St. John were of slight importance. Under such circumstances, we cannot regard the shifting and smashing of cargo in No. 4 'tween-decks as a necessary result of sea perils had the stowage been

careful. The Frederick Luckenbach (D. C.) 15 F.(2d) 241, 1927 A. M. C. 147.

On scarcely disputed evidence the court found that the damage to the sugar in No. 2. hold was due to sea water that came down through the hatch coamings when the steam pipe casings were torn away by the storm. Such damage done to a seaworthy vessel was plainly caused by "perils of the seas." Duche v. Brocklebank (C. C. A.) 40 F.(2d) 418; The Rosalia (C. C. A.) 264 F. 285. The claim of Atlantic Sugar Refineries, Limited, for sea water damage was therefore properly rejected.

The remaining question relates to the notice of claim in the Hodgson suit. The notice clause could in no event apply to the loss in connection with the cocoanut oil because it was never delivered. The San Guglielmo (D. C.) 241 F. 969; Lehn & Fink Co. v. American-Hawaiian S. S. Co.,[1] 1924 A. M. C. 1054. Wm. Thomson & Co., Limited, were ships' agents for the respondent at St. John and also forwarding agents for Hodgson at St. John. They promptly arranged for a survey and telegraphed Hodgson that the coffee was damaged by molasses and cocoanut oil "and asked for instructions." While no answer to this telegram appears in the record, Wm. Thomson & Co., Limited, made out the railroad bill of lading for shipment of the coffee to Montreal, and it went forward because of their action. Under such circumstances it is hard to see why they should not be regarded as agents for Hodgson in respect to this cargo. They seem to have been such, not only because of what they did, but because it was the custom for the ships' agents to act for the shippers in receiving and forwarding merchandise. By forwarding the coffee they would release the respondent from any claim that Hodgson had against the respondent in respect to that shipment if notice were not imputed to them as agents for the ship. The bill of lading required notice "to the agents of the steamer at the port of destination." Therefore Wm. Thomson & Co., Limited, were the very people authorized to receive notice, and must in the exercise of ordinary good faith as forwarding agents for Hodgson be regarded as giving notice to themselves on behalf of the shipper.

In Lawrence Leather Co. v. Norton, Lilly & Co. (D. C.) 15 F.(2d) 101, Judge Goddard held that notice to an agent who represented both parties was notice to either of them to whom it would be notice if the agent repre-

sented him alone. See, also, Astor v. Wells, 4 Wheat. at page 487, 4 L. Ed. 616; Gale v. Lewis, 9 Q. B. 730; In re Hampshire Land Co., [1896] 2 Ch. 743. The questions before us resemble those dwelt upon by Vaughan Williams, J., in the case last mentioned, first, whether it was within the scope of the duty of Wm. Thomson & Co., Limited, to give notice of the information that they had received that the goods were damaged, and next whether it was within the scope of their duty as agents of the respondent to receive such notice. We think it plain that anything less than an affirmative answer to both questions would involve a fraud upon the shipper.

The decision in Bombace v. American Bauxite Co. (C. C. A.) 39 F.(2d) 867, is relied on by the appellant, but is not in point. There the agent was the owner of the merchandise through acquisition of the bill of lading, so that he could not represent the latter in receiving notice of claim.

Decree affirmed.

