Petition of HOWARD.

THE CHAS. P. GREENOUGH.

THE THOMAS H. O'LEARY.

THE AGNES HOWARD.

THE KATHERINE HOWARD.

No. 16277.

District Court, E. D. New York.

Oct. 7, 1943.

558

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for petitioners.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for Shawmut Coal & Coke Company, Inc., claimant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City, and Bingham, Dana & Gould, of Boston, Mass. (Albert T. Gould, of Boston Mass., of counsel), for Metropolitan Coal Co., claimant.

CAMPBELL, District Judge.

The petition was brought for exoneration from, or to limit liability for the loss of the cargo of coal owned by the claimant, Shawmut Coal & Coke Company, Inc., laden on the barge Katherine Howard, and the cargo of coal owned by the claimant, Metropolitan Coal Company, laden on the barge Thomas H. O'Leary.

The petitioner Thomas J. Howard was the owner of the barges Katherine Howard

and Thomas H. O'Leary, and the charterer in possession, by oral charter, of the tug Chas. P. Greenough from the petitioner William G. Howard who was the owner thereof.

The tug Chas. P. Greenough left New London, Connecticut, on the afternoon of December 4, 1940, with the box barges Thomas H. O'Leary, Katherine Howard and Agnes Howard in tow tandem in the order named. Each of the three box barges had taken on a cargo of coal at a New Jersey port, and was bound in tow of the Chas. P. Greenough to the port of Boston, Massachusetts.

After leaving New London, the tug Chas. P. Greenough, and her tow passed through Fishers Island Sound, and out by Watch Hill into Block Island Sound, and proceeded in an easterly direction toward their destination.

During the evening of December 4th, the Katherine Howard broke away from the Thomas H. O'Leary, and subsequently became a total loss, as did also the Agnes Howard.

After the middle and stern barges broke adrift, the tug Chas. P. Greenough headed for Point Judith Breakwater, but the Thomas H. O'Leary filled up and sank at a point said to have been about two miles westerly of the entrance to Point Judith Breakwater.

We are not concerned with the Agnes Howard, as no claim for loss of her cargo has been filed in this proceeding.

The bargees, or captains of the Thomas H. O'Leary and the Katherine Howard, signed bills of lading for the cargoes in question on their respective barges, but the charter-parties constituted the contracts of carriage, and not the bills of lading.

Before the cargo in question had been loaded on the barge Thomas H. O'Leary, the petitioner, Thomas J. Howard, had entered into a written charter-party with the claimant Metropolitan Coal Company, which covered the carriage of the cargo of coal in question (Metropolitan Ex. 2).

That charter-party contained the following provisions:

"The acts of God, dangers and accidents of the sea, and navigable waters, * * * breakdown of engines, boilers, and/or machinery (either of Tug or Barge), * * * or any other cause whatsoever beyond the control of the Charterers, Owner, Barge, or Tug always excepted. It is also agreed that this Charter Party and all shipments hereunder are subject to the provisions of and exemptions from liability contained in the Act of Congress of the United States approved February 13, 1893, entitled 'An act relating to navigation of vessels,' etc., [46 U.S.C.A. § 190 et seq.] and the supplements thereto, and of Sections 4282 to 4287 each inclusive of the U. S. Revised Statutes, [46 U.S.C.A. §§ 182 to 187] which provisions and exemptions shall extend to and govern the liability of the Barge and/or Tug, and/or Owners and/or Agents to the cargo loaded on the Barge and/or to the Owners of the said cargo.

"If the Owner and/or Agents shall have exercised due diligence to make the Tug and/or Barge in all respects seaworthy and properly manned, equipped and supplied, neither the Owner or Agents, nor said Tug and/or Barge shall be liable for any loss of, or damage to cargo resulting from fault or negligence of the pilot, master or crew in the navigation of the Tug and/or Barge, or from latent or other defects, or unseaworthiness of said Tug and/or Barge, whether existing at the time of shipment or at the beginning of the voyage but not discoverable by due diligence; * * *."

Before the cargo on board the Katherine Howard, which was being carried for the claimant Shawmut Coal & Coke Company, Inc., was loaded thereon, oral arrangements were made by it and the petitioner Thomas J. Howard, and thereafter and on or about November 22, 1940, before the said cargo was loaded on said barge on November 25, 1940, a written charter-party was forwarded by the said petitioner to said claimant and retained by said claimant without noting any objection to its terms.

It contained the following provisions:

"The acts of God, dangers and accidents of the sea, and navigable waters, * * * breakdown of engines, boilers and/or machinery (either of Tug or Barge), * * * or any other cause whatsoever beyond the control of the Owner, Barge or Tug always excepted. It is also agreed that this Charter Party and all shipments hereunder are subject to the provisions of and exemptions from liability contained in Section 3 of the Act of Congress of the United States approved February 13, 1893, entitled 'an act relating to the navigation of vessels,' etc. 46 U.S.Code 192 [46 U.S.C.A. § 192], and the supplements thereto and of Sections 4282 to 4287, each inclusive, of the United

States Revised Statutes, and that the provisions, exemptions and limitations of liability in said Statutes shall extend to and govern the liability of the Barge and/or Tug and/or Owners to the cargo loaded on the Barge and/or to the Owners of said cargo. The Owner does not by implication, or otherwise, warrant the seaworthiness of the Barge or the towing vessel."

"If the Owner shall have exercised due diligence to make the Tug and/or Barge in all respects seaworthy and properly manned, equipped and supplied, neither the Owner nor said Tug and/or Barge shall be liable for any loss of, or damage to cargo resulting from fault or negligence or errors of navigation of the pilot, master or crew in the navigation of the Tug and/or Barge, or in the care and custody of the cargo, or from latent or other defects, or unseaworthiness of said Tug and/or Barge, whether existing at the time of shipment or at the beginning of the voyage; * * *."

█ The said petitioner having thus given notice to the claimant, Shawmut Coal & Coke Company, Inc., on what terms he would furnish tug and barge service, the said claimant actually accepted such terms and entered into a special contract incorporating them when it ordered such service without protest. The Oceanica, 2 Cir., 170 F. 893; Ten Eyck v. Director General of Railroads, 2 Cir., 267 F. 974, certiorari denied 254 U.S. 646, 41 S.Ct. 14, 65 L.Ed. 455; Sun Oil Co. v. Dalzell Towing Co., Inc., 2 Cir., 55 F.2d 63, affirmed 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311.

█ Under these circumstances the papers signed by the Barge Captains, denominated bills of lading, were merely receipts and do not express the terms of the carriage. The William I. McIlroy, D.C., 37 F.2d 909, affirmed 2 Cir., 45 F.2d 1023; The G. R. Crowe, 2 Cir., 294 F. 506, 508; Flat-Top Fuel Co., Inc., v. Martin, 2 Cir., 85 F.2d 39, 41.

█ The petitioner Thomas J. Howard was a private carrier. The entire capacity of each of the barges was given to the shippers, and no cargo other than that of the claimant shipper was carried, therefore, the petitioner Thomas J. Howard was not a common carrier, but a bailee, and the contract of carriage was a private contract of carriage. The Fri, 2 Cir., 154 F. 333, 338; The William I. McIlroy, supra. The parties were free to contract as they chose. The Westmoreland, 2 Cir., 86 F.2d 96.

█ The burden of proof in this case rests upon the claimants. The T. N. No. 73 (Commercial Molasses Corp. v. New York Tank Barge Corp.), 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89.

Before determining the question of limitation of liability in this case, we must first determine whether there is any liability, as there would be nothing to limit unless claimants, or either of them, succeeded in establishing its claim. The 84-H, 2 Cir., 296 F. 427; The T. N. No. 73 (Commercial Molasses Corp. v. New York Tank Barge Corp.), supra.

We will, therefore, first consider whether there was any liability on the part of the petitioners in respect to the loss of either, or both, of the said cargoes.

They were being carried from New York to the port of Boston, via Cape Code Canal, in the wooden barges Thomas H. O'Leary, and the Katherine Howard.

The Thomas H. O'Leary was a box barge of heavy construction, 160 feet long, 34 feet beam, and 19 feet 6 inches deep, with two 4 inch gasoline pumps, one of which was double action, and a 1,650 pound fluke anchor, and 60 fathom galvanized bar-link anchor chain. She was also equipped with 1½ inch tongue and groove white pine hatch covers, running her entire length, supported by the top of the combing, a center strong back, and sister strong backs, and secured by a ridge pole on the top of the center strong back at the peak of the hatches, bolted through the center strong back, and battens on the edge of the combing, and battens on top of the sister strong backs held down with iron straps, and with chocks at the combing edge of the hatches. These hatch covers had been made new for the boat in 1936. She had been built in 1910, and rebuilt in 1937, and had been drydocked in November 1939. There were 1712.5/20th long tons of coal laden on the Thomas H. O'Leary, and she was consigned to the claimant Metropolitan Coal Company at Boston.

The Katherine Howard was a box barge, approximately 119 feet long, approximately 32 feet beam, and approximately 15 feet deep, with two gasoline pumps, one a 4 inch and the other a 3 inch, and a 2,000 pound anchor, and a 90 fathom galvanized bar-link anchor chain. She was also equipped with 1½ or 1⅛ inch tongue and groove hatch covers, of substantially the same construction as those of the Thomas H.

O'Leary, and secured in substantially the same manner. She had been built in 1913, and had been drydocked in May, 1940.

There were 903 long tons of coal laden on the Katherine Howard, and she was consigned to Shawmut Coal & Coke Company, Inc., at Boston, Massachusetts.

Prior to the voyage in question both barges were inspected by William G. Howard, one of the petitioners, a competent man of 20 years experience, and the son of Thomas J. Howard, the other petitioner. This inspection consisted of looking over the barges and their equipment, including the hatch covers and anchor chains.

The cargo on the barge Thomas H. O'Leary was loaded at Edgewater.

The cargo on the barge the Katherine Howard was loaded at Hoboken.

The tow left New London at about 12.30 P.M. on December 4, 1940. The barometer was steady that day, "tending to good weather". The captain of the tug Chas. P. Greenough made attempts to ascertain if weather conditions were favorable for the trip easterly, by calling the Sachem and other boats in Long Island Sound, by radio report from Bridgeport and Block Island, from Station W.O.L., and Point Judith Lifesaving Station, which was ahead of him, and in the direction in which he was going.

The tow proceeded by way of Fishers Island Sound, and upon emerging therefrom in the vicinity of Watch Hill, Rhode Island, at about four to four-thirty o'clock P.M., the sea hawsers, which were 150 fathoms in length, were let out. The hawsers were supplied by the tug and were brand new.

The weather throughout the voyage, up to and at that time, was still favorable, the wind being light northwesterly. The tow proceeded, and at about six o'clock P.M., there was a sudden change in the weather, the wind veering into the southwest, and back to south-southwest, and building up in strength, and the sea commencing to make. At first these conditions were not too bad for continued towage. The wind increased somewhat in force, but the sea rapidly built up, and about seven:fifteen o'clock P.M., the captain of the tug Chas. P. Greenough called the Coast Guard Station at Point Judith, and requested that a vessel be sent out to stand by the tow, to render assistance should such become necessary. It was snowing and the sea continued to build up very fast reaching a height which I am convinced was much less than the estimated 20 feet in height.

The wind also continued to mount in strength, but not in proportion to the very heavy sea and at no time did the wind reach the force of a gale.

The sea was much higher than was to be expected from the strength of the wind, but bad weather and such heavy seas were not unusual in the area in which it was encountered on the night in question.

The force of the wind, as reported by the Government Station at Block Island and Coast Guard Station at Point Judith, is more convincing than estimates of those on the boats at the time.

The height of the seas was in view of other circumstances shown not as high as estimated by the witnesses including the Coast Guardsmen; this is apparent from the fact that the cabin windows on the Thomas H. O'Leary were not broken until long after the hatch covers were broken, in fact not until shortly before she sunk, and by reason of the fact that the Coast Guard boat was able to remain alongside the Katherine Howard for a considerable period of time. The evidence of the Captain of the tug Chas. P. Greenough, as to the time when the cabin windows broke, given on the trial of the instant suit, differed from that given by him before the Local Inspectors, and I believe that the testimony given by him before the Local Inspectors, shortly after happening, was correct, as he naturally would have had a better recollection shortly after the accident than that given by him on the trial of the instant suit, more than two years after the event. We must not lose sight of the fact that the happenings here in question occurred in the month of December, when high winds and high seas were reasonably to be expected.

A peril of the sea as defined by the Circuit Court of Appeals of this Circuit, in The Rosalia, 264 F. 285, at page 288, is, "something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety". The same test in somewhat different words is also found in the opinions in The Giulia, 2 Cir., 218 F. 744; Duche v. Thomas & John Brocklebank, 2 Cir., 40 F.2d 418; The Naples Maru, D.C., 20 F.Supp. 258, also under title of Philippine Sugar C. Agency

v. Kokusai Kisen, etc., 2 Cir., 106 F.2d 32; The Manuel Arnus, D.C., 10 F.Supp. 729.

■ I am convinced that the wind and sea on the night and at the times and places in question were not catastrophic, but which, on the information as to wind directions received by the master of the tug Chas. P. Greenough from the Station at Point Judith, might well have apprised him as to the probability of sudden change of weather and bad weather that might be expected. In fact, he called the Coast Guard Station at Point Judith, for a boat to stand by the tow, before there was any apparent danger, and I find that the damages suffered by the barges in question were not the result of a peril of the sea.

Let us first consider the barge Thomas H. O'Leary.

■ Claimant, Metropolitan Coal Company, claims that the barge Thomas H. O'Leary was unseaworthy in the following particulars:

1. In respect to her hatch covers.

2. For failing to be supplied with tarpaulins.

3. By reason of being overloaded.

As to the hatch covers she was not unseaworthy simply because they were 1½ inches thick, as both the Katherine Howard and the Agnes Howard had hatch covers of the same thickness or even thinner, and arranged in the same manner, and no damage was done to them while afloat was reported, and the reason is quite obvious, they had sufficient freeboard. In the case of the Thomas H. O'Leary she had but little freeboard. The Master of the tug Chas. P. Greenough said, on his examination before the Local Inspectors, that it was but about 1½ feet amidships, while when testifying on the trial of the instant suit, he said she had about 3 feet. I believe his recollection was better at the time when he testified before the Local Inspectors, and that he was in error when he testified on the trial of the instant suit. With but 1½ feet about or even about 3 feet freeboard, amidships, of course the seas, if of any substantial height, came on the hatch covers with great force, and broke them, I greatly doubt that, under the circumstances, hatch covers of 2½ or even 3 inches would not have broken.

With reference to a failure to provide tarpaulins, I can not find unseaworthiness, as tarpaulins are not used on coal boats, but are provided for boats carrying dry cargoes to prevent any water from going through the hatches.

Under the circumstances in the instant suit, it does not seem to me that tarpaulins would have withstood the pounding of the seas any better than the hatch covers.

The trouble with the Thomas H. O'Leary was that she was overloaded, and by reason of her low freeboard, the seas struck her with such force that she did not quickly rise after she was struck before the next sea struck her, and the seas continued to pound on the hatch covers breaking them, and the water entered the hatches causing her ultimately to sink, and with such a low freeboard the hatch covers were much too thin to withstand the weight of the seas, which came on the deck of the Thomas H. O'Leary.

■ Petitioners contend that the claimant, Metropolitan Coal Company, as charterer, was responsible for what occurred, by reason of loading on the Thomas H. O'Leary the amount of cargo laden thereon, but that is not the case.

The claimant, Metropolitan Coal Company, had a right to assume that the barge was fit for the purpose as represented. Societa Anonima Cantiero Olivo v. Federal Ins. Co., 2 Cir., 62 F.2d 769.

Petitioner, Thomas J. Howard, represented in the contract of carriage, the charter-party, that the Thomas H. O'Leary had a carrying capacity of 1800/1900 tons or thereabouts, whereas the cargo loaded on the said barge was much less than that, towit, 1712.5/20th long tons.

A careful inspection of the barge Thomas H. O'Leary by the petitioner, Thomas J. Howard, at the time the charter-party was entered into, and at the time of delivery to the charterer and of loading, would have demonstrated to him the fact that the carrying capacity of the said barge at that time of the year for the contemplated voyage was much less than he represented.

■ The petitioners make a point of the fact that the barge Thomas H. O'Leary had previously carried cargoes of coal for said claimant of larger amount than that carried on the day in question, which is true, but knowledge of what the barge could carry in winter can not be imputed to said claimant by reason thereof, as such cargoes had not been carried as late in the year as December, which was the time of the year that was most dangerous, for barges of her construction.

The barge Thomas H. O'Leary was unseaworthy by reason of overloading, and because thereof of furnishing her with hatch covers which were too thin, and this was clearly proven regardless of who had the burden of proof.

The petitioner, Thomas J. Howard, did not use due diligence to make the barge Thomas H. O'Leary seaworthy before the making of the charter-party, or the delivery of said barge to said claimant, or her loading, and he and said barge are liable.

The contract of carriage was a personal contract, made by the petitioner, Thomas J. Howard, and contained a representation on his part as to the carrying capacity of the said barge, and he was also familiar with the hatch covers which were in use on said barge, and he can not escape liability or limit his liability by reason of the inspection made by his son, William G. Howard, the other petitioner.

The contract being a personal contract on the part of the petitioner, Thomas J. Howard, he can not claim either exoneration from or limitation of his liability with respect to any breach thereof. Pendleton v. Benner Line, 246 U.S. 353, 38 S.Ct. 330, 62 L.Ed. 770; Luckenbach v. McCahan Sugar Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522. Exoneration from liability and the right to limit liability of the petitioner, Thomas J. Howard, and the barge Thomas H. O'Leary, must be denied.

We now come to a consideration of the barge Katherine Howard.

The claimant, Shawmut Coal & Coke Co., Inc., claims that the said barge Katherine Howard was unseaworthy with respect to her anchor chain. No claim is made of any fault with the anchor.

As we have already shown, the seas were running high and the barge Thomas H. O'Leary with her low freeboard was feeling the effects of those landing on her deck and the towing hawser from the Thomas H. O'Leary to the Katherine Howard parted, and the barge Katherine Howard dropped her 2,000 pound anchor, which held, and the chain did not part. The bottom was hard, and after about an hour or more, the anchor commenced to drag, and continued to drag for about an hour or more, during which time the chain did not part. As the shore was approached the bottom was rocky, and the anchor chain parted, and the Katherine Howard was sunk and destroyed and her wreckage was carried ashore. The high seas were of course the cause of the sinking and breaking up of the Katherine Howard.

A portion of chain was offered in evidence on behalf of the said claimant, the identification of which was not entirely satisfactory, but, for the sake of argument, I will accept as sufficient, but in passing I would say that the appearance of the chain as to rust was certainly not improved by being left outdoors or in the shed described. In any event, no presumption of unseaworthiness arises in this case simply because the chain parted under the conditions as they existed. The barge Katherine Howard was not a common carrier, but a private carrier, and the owner, the petitioner, Thomas J. Howard, was not an insurer, but a bailee for hire, and bound to furnish an anchor chain which was reasonably fit for the purpose of holding the barge at anchor under the conditions of wind and wave that might reasonably be expected at that time of the year in the area where the said barge anchored.

The anchor chain in question performed that function for a period of over an hour while the anchor held, and while it dragged over the ground for over an hour, until it approached that portion of the bottom which was rocky. The failure of the anchor to hold cannot be ascribed to the anchor chain. The anchor chain was inspected visually by William G. Howard, a man of experience, before the commencement of the voyage, and also by the captain of the barge, and found to be fit. On behalf of claimant the contention is made that some test other than a visual examination is required, but no test could be made other than use of the chain in anchoring, which was done about two days before the sinking, except to have the chain mechanically tested, and surely no such burden should be imposed on the owner of barges used for such short voyages, each time before the commencement of the voyage.

The barge Katherine Howard was seaworthy, and the petitioner, Thomas J. Howard, and the barge Katherine Howard should be exonerated as to the cargo of the Katherine Howard.

Even if the petitioner, Thomas J. Howard, was not entitled to exoneration, he would be entitled to limitation of liability for himself and the barge Katherine

Howard, as he used due diligence to make the barge seaworthy, and that is all that he was required to do under the contract of carriage.

No particular fault is alleged against the tug Chas. P. Greenough, or the petitioner William G. Howard.

Claimants' advocates voiced their disbelief in the ownership of the tug Chas. P. Greenough by the petitioner William G. Howard, but that does not, nor does the incident with reference to the check used in his purchase, disprove the positive testimony of the petitioners.

No fault with reference to the navigation, or towing of the tug, is shown, and the only condition that is urged as to her alleged unseaworthiness is the fact that her crew were not all of the grade or rank required, but that bears no causal relation to the accident. The petitioner William G. Howard, and the tug Chas. P. Greenough, should be exonerated from any liability to either or both of the claimants.

A decree should be entered in accordance with this opinion.