## THE PORTUGUESE PRINCE.

### (District Court, S. D. New York. December 19, 1913.)

SHIPPING (§ 141*)—DELIVERY OF CARGO—CONSTRUCTION OF HARTER ACT.

The provision of Harter Act Feb. 13, 1893, c. 105, § 2, 27 Stat. 445 (U. S. Comp. St. 1901, p. 2946), making it unlawful to insert in a bill of lading any words whereby the obligations of the master "to carefully handle and stow cargo and to care for and properly deliver same shall in any wise be lessened, weakened or avoided" does not make improper a substituted delivery in accordance with long-established custom, nor render void a provision in a bill of lading authorizing delivery on a quay or into lighters, and providing that the goods shall "remain at consignee's risk and expense immediately after being placed into lighters or on the quay."

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 493, 497-499; Dec. Dig. § 141.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

In Admiralty. Suit by Charles Stoffregen against the Prince Line. Limited, as owner of the steamship Portuguese Prince. Decree for respondent.

The steamship Portuguese Prince arrived at New York with a cargo of coffee in bags from various ports in Brazil on October 12, 1912, and on Monday, October 14th, at 10 o'clock a. m., commenced the discharge of her cargo at pier No. 7, East river, belonging to the New York Dock Company, one of the piers customarily used for coffee ships.

In pursuance of instructions from the dock company which represented the libelants and other consignees, and in accordance with established custom, when the coffee was discharged, it was placed by the stevedores of the steamship according to marks, each mark within a certain space, designated for it, inside the shed, and not far from the string piece of the dock. The bags were piled in the usual and customary manner tiered to a height averaging about 16 tiers. The coffee bags were approximately three feet long, two feet wide, and eleven inches thick. In making the piles, the two outside tiers, as was customary, were stowed, in order to insure stability, with their longest dimensions at right angles to the string piece and about two feet inside of it. This tiering went up eight tiers, then a second tiering of a similar kind was begun one-half bag further in than the lower eight tiers. Inside these two tiers the bags were stowed with their long dimensions parallel with the string piece. This method of piling bags is shown to have been followed for years without resultant accidents and to have been considered a safe method of tiering.

On Tuesday, October 15th, at or about 4 o'clock p. m., a pile of bags of Victoria coffee, for which the libelants held a bill of lading and on which they paid freight, was completed on a portion of the dock assigned by the dock company for them, not far away from the clerk's office at the inshore end of the pier. At or about 11 o'clock on the morning of Wednesday, October 16th, owing, as the evidence tends to show, to the bursting of some of the bags in the lower outside tiers of this pile, the pile fell against one of the dock doors, bursting it open and allowing 34 of the bags to fall into the river. Of these 30 were salved and delivered in a damaged condition to the libelants. The claim is for loss of 4 bags and damage to 30 bags.

The bill of lading contained, in clause 3, the following provision: "The goods to be discharged from the ship as soon as she is ready to unload, at the quay or into hired lighters if necessary, but at the expense and risk of the owners of the goods. The collector of the port is authorized to grant an order for the discharge of cargo when for New York immediately after entry of the steamer. Goods for transhipment to be taken delivery of as soon as they can be discharged from the steamer. The goods to remain at consignee's risk and expense immediately after being placed into lighters or on the quay."

The answer of the steamship company set up that the merchandise had been delivered before the accident occurred and was, at the time of the accident, at risk of the libelants as cargo. owners, under the provision of the bill of lading quoted.

The libelants contended that under section 1 of the act of Congress approved February 13, 1893, entitled "An act relating to the navigation of vessels," etc., commonly known as the Harter Act, the clause of the bill of lading above quoted was void.

Harrington, Bigham & Englar, of New York City (D. Roger Englar, of New York City, of counsel), for libelants.

Convers & Kirlin, of New York City (John M. Woolsey, of New York City, of counsel), for respondent.

HOUGH, District Judge (after stating the facts as above). The Boskenna Bay (D. C.) 40 Fed. 91, 6 L. R. A. 172, entitles the respondent to a dismissal of this libel unless the very ingenious argument advanced in respect of the Harter Act shall prevail. By the second

section of that act it is declared to be unlawful to insert any words in any bill of lading whereby the obligation of the master "to carefully handle and stow cargo and to care for and properly deliver same shall in any wise be lessened, weakened or avoided."

The language of the bill of lading under consideration has long been familiar to shippers and their counsel; it is the ordinary form of words by which a carrier is authorized to make a substituted delivery. The form of words long antedated the Harter Act, and a substituted delivery, whether by contract or usage, has long been known to the law. The draftsman of the Harter Act is presumed to have known that there was more than one kind of delivery, or more than one method of making delivery. The obligation of the statute is not to deliver in any peculiar manner, or any one manner, or any special manner, but only to properly deliver.

The final question, therefore, is whether a reasonable substituted delivery based upon contract and strengthened by long custom is a proper delivery. It was a proper delivery before the passage of the Harter Act, and, during more than 20 years which have elapsed since that statute became effective, no case has arisen (so far as I know) in which the second section of the act has been applied to these familiar words of the bill of lading.

I do not think that they do apply, and it is therefore ordered that the libel be dismissed.