**DAVIDSON et al. v. FLOOD BROS. et al.**

**THE CARRISO.**

Circuit Court of Appeals, Ninth Circuit.
January 14, 1929.

No. 5482.

S. Hasket Derby, Joseph C. Sharp, James A. Quinby, and Lloyd M. Tweedt, all of San Francisco, Cal., for appellants.

Louis T. Hengstler and Frederick W. Dorr, both of San Francisco, Cal., for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. By the decree below appellants (libelants) were denied recovery for damage from sea water to certain shipments of cork board carried on

deck of appellees' motorship Carriso on a voyage from Lisbon to San Francisco. On-deck stowage was pursuant to a clause in the bills of lading granting appellees "liberty to carry the goods and any other goods on deck or under deck." And, the evidence being that cork board so carried is likely to be damaged to some extent by sea water, the sole question presented is whether the clause is within the denunciation of the Harter Act (27 Stat. 445; 46 USCA § 190) which in section 1 declares that it shall not be lawful for the carrier to insert in any bill of lading any provision by which it "shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed" to its charge.

It is not seriously contended that, if the right to carry cork board on deck at all be granted, the consignments here were improperly loaded or stored, but only that it was negligence per se to carry them on deck, instead of under deck. The implications of the statement in appellants' brief, characterizing the language quoted from the bill of lading as a "printed catch-all clause," are rebutted by certain circumstances which would seem to have little, if any, bearing on the main question, and are referred to only because of such characterization. At the trial appellants admitted that on two prior occasions they had given the appellees permission to carry cork board on deck; that in respect to such shipments the understanding was that appellees were to pay the extra cost of insurance; that in the instant case appellants received the bills of lading prior to the arrival of the goods; that on such arrival they took no exception to the condition of the goods, though they had knowledge that they had been carried on deck, and the stain of sea water was plainly visible on the outside of the crates; and that they notified appellees that they would have to pay the extra insurance for on-deck carriage.

It is to be noted that appellants concede that the inhibitions of the Harter Act are not of universal application. They say: "We must also remember that a stipulation permitting the carriage of goods on deck is not invalid per se. If it is proper, from the nature of the goods (like lumber, for instance), to ship on deck, then such carriage is proper and, under section 3 of the Harter Act, a shipowner will be excused for loss or damage caused by perils of the sea or faults or errors in navigation. If, however, the goods, from their nature, cannot safely be carried on deck, then a stipulation for such carriage would seem invalid under American law."

But, if the goods can be *"safely"* carried on deck, the shipper's consent would be wholly needless. And if the shipper may, notwithstanding the Harter Act, lawfully stipulate that his lumber may be carried on deck, for what reason is he to be prohibited from making a similar stipulation respecting his cork board? Some kinds of lumber may suffer less injury than cork board from salt water and exposure to the weather, but other species, it is imaginable, may suffer more. Where is the line to be drawn, and how are the courts to draw it? It is not a question of compelling a shipper to assume a peril in order to obtain the carriage of his goods. Two modes are offered him, the one safer than the other, and presumably more expensive. He may have either at his option. Nor is it a question of relieving the carrier from the consequences of its negligence; it must exercise all reasonable care in either case.

In terms, at least, the Harter Act does not prohibit such a stipulation, and "stipulations not covered by the terms of the statute, which were valid under American law before the act, are unaffected by it." Hughes, Admiralty (2d Ed.) p. 9. In Lawrence v. Minturn, 17 How. (58 U. S.) 100, 15 L. Ed. 58, it is said: "The maritime codes and writers have recognized the distinction between cargo placed on deck, with the consent of the shipper, and cargo under deck. There is not one of them which gives a recourse against the master, the vessel, or the owners, if the property lost had been placed on deck with the consent of its owner." And see, also, The Delaware, 14 Wall. (81 U. S.) 579, 604, 605, 20 L. Ed. 779; Higgins v. Watson, Fed. Cas. No. 6,470; The Thomas P. Thorn, Fed. Cas. No. 13,927; Two Hundred and Sixty Hogsheads of Molasses, Fed. Cas. No. 14,296; The Portuguese Prince (D. C.) 209 F. 995; The Sarnia (C. C. A.) 278 F. 459.

Affirmed.