## MACKEY et al. v. UNITED STATES.

No. 223, Docket 22303.

United States Court of Appeals
Second Circuit.

Argued April 14, 1952.

Decided June 5, 1952.

---

Myles J. Lane, U. S. Atty., New York City (Edward L. Smith, William H. Lane and William H. Postner, New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, New York City (F. Herbert Prem, New York City, of counsel), for appellees.

Before SWAN, Chief Judge, AUGUSTUS N. HAND and FRANK, Circuit Judges.

SWAN, Chief Judge.

This case involves a shipment of coffee for carriage from Cape Haitien, Haiti, to New Orleans, Louisiana, on the steamer Yoro, of which the United States was bareboat charterer and operator. The appeal from the final decree brings up for review the interlocutory decree, entered October 29, 1948, which held the United States liable for loss of, and damage to, the shipment during a sudden storm which occurred while part of the shipment was still on the shippers' lighters which had been tied up alongside the Yoro pursuant to instructions given by the ship. The district court held that the libelants' cargo had been delivered to the respondent and was in its actual custody and control at the time of the loss and damage, and that the respondent thereafter failed to exercise due diligence in the handling and care of the cargo, as required by section 3(2) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(2).

The court's findings of fact and conclusions of law are reported in 83 F.Supp. 14 and need not be here repeated in detail. In summary the story is as follows: Because Cape Haitien is an open port with no wharves, the Yoro, on her arrival on March 23, 1943, anchored in the roadstead about a quarter of a mile off shore where she was exposed to northerly winds. The libellants' shipment of coffee was brought to the ship's side pursuant to an oral freight engagement previously made between the shippers and the ship's agent. The lighterage from shore to vessel was arranged and paid for by the shippers. There were six wooden lighters, each manned by four lightermen who propelled the lighter by oars and were to place the bags of coffee into the ship's slings for hoisting to the deck by longshoremen in the employ of the ship. When the lighters arrived alongside, the sea was calm and there was a northerly wind of a force of 2 on the Beaufort scale. The vessel's

supercargo directed where the lighters were to be placed and their lines were made fast by the vessel's longshoremen. Loading began at 4 P.M. It was stopped at 4:35 P.M. because of a sudden squall of rain, with northerly winds which reached a force of 7 and kicked up a very rough sea. The storm stopped at 7:30 P.M. and loading was resumed. During the storm one lighter capsized losing all its cargo which had not previously been loaded on the ship, and some of the bags of coffee in the other lighters were so badly wet by spray and water coming over the sides that the ship refused to load them. Thereafter bills of lading were issued with exceptions noted as to the bags lost, rejected, or wet. The damages which the final decree awards the libellants represent the value of the coffee lost from the capsized lighter and the libellants' loss in respect of the coffee which the ship refused to receive because of its wet condition.

■ The appellant's primary contention assails the court's legal conclusion that the libellants' cargo had been delivered to the vessel and was in respondent's actual custody and control at the time when the loss and damage occurred. It is argued that no bag of coffee was delivered to the ship until the lightermen put it in the ship's slings to be hoisted aboard. Two cases, inferentially at least, support this position. The Cordillera, C.C.S.D.N.Y., 6 Fed.Cas. page 545, No. 3,229A; The Barge Compass Light, D.C.E.D.N.Y., 1924 A.M.C. 200. But we think they are inconsistent with this court's decisions in Palmer v. Agwilines, Inc., 2 Cir., 135 F.2d 689, 691 and Roah Hook Brick Co. v. Erie R. Co., 2 Cir., 179 F.2d 601, 604. When the lighters were moored alongside according to instructions issued by the ship and loading was commenced, the cargo was accepted for transportation and was thereafter subject to the ship's control since the ship not only determined where and when the loading would take place and the speed of the oper-

ation but also was in sole control of the lighters which after the storm came up could not have returned to shore.

■ Appellant also argues that the coffee was not in the exclusive possession of the ship at the time of loss because no dock receipts, boat notes or bills of lading had been issued. We do not agree. While the giving of such documents is important evidence that the custody of the goods has been taken by the carrier, it is neither essential nor conclusive, provided in fact the shipment has been delivered and accepted by the carrier.[1]

■ The appellant next contends that even if the cargo was delivered to the ocean carrier, the shippers cannot recover without proof of the seaworthiness of the lighters. The district court made no finding as to seaworthiness, but we think the evidence is sufficient to establish it. There was no unexplained foundering as in Commercial Molasses Corp. v. New York T. B. Corp., 2 Cir., 114 F.2d 248, affirmed 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89. Why one lighter capsized and the others shipped water is clear. They were not intended to be out in weather such as that encountered during the storm and the fact that they were so constructed that water came in over their sides does not prove them unseaworthy. Nor does the fact that their pumps were of insufficient size to bail out the accumulated water. The ship's master testified that the capsized lighter had "a regular barge pump" operated by hand "for rain" but not sufficient to keep the lighter from capsizing "in that weather." The other lighters were equipped with similar pumps.

■ Finally it is urged that the loss and damage resulted from a sea peril and is excused under section 4(2) (c) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(2) (c). Assuming that the storm was severe enough to constitute "a peril of the sea," the respondent cannot avail itself

1. Inland Waterways Corp. v. Standard Commercial Tobacco Co., 5 Cir., 65 F.2d 715, 717; McLeod Lumber Co. v. Crowley, D.C.N.D.Cal., 8 F.2d 283; St. Louis, I. M. & S. R. Co. v. Commercial Union Ins. Co., 139 U.S. 223, 238, 11 S.Ct. 554, 35 L.Ed. 154; Strohmeyer & Arpe Co. v. American Line S. S. Corp., 2 Cir., 97 F.2d 360, 361.

244

of the defense if it might have avoided the loss by skill and diligence.[2] According to Captain Davies who testified as an expert, the loss could have been averted by the application of customary protective measures such as dropping the lighters astern into the vessel's lee and using oil to quiet the waves. No testimony was adduced to contradict the expert opinion of Captain Davies.

Decree affirmed with costs.

**2.** Clark v. Barnwell, 12 How. 272, 280, 13 L.Ed. 985; Compania de Navigacion La Flecha v. Brauer, 168 U.S. 104, 118, 18 S.Ct. 12, 42 L.Ed. 398; Atlantic Sugar Refineries v. Royal Mail Steam Packet Co., 2 Cir., 47 F.2d 880, 882.