**FEDERAL INS. CO. v. AMERICAN EXPORT LINES, Inc.**

United States District Court
S. D. New York.
June 26, 1953.

See also, D.C., 109 F.Supp. 819.

Bigham, Englar, Jones & Houston, New York City, for libelant, Donald M. Waesche, Jr., New York City, of counsel.

Haight, Deming, Gardner, Poor & Havens, New York City, for respondent, James M. Estabrook, New York City, of counsel.

DIMOCK, District Judge.

Exceptions have been taken to the amended libel in this case on the ground that the action is time-barred by the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6), by the provisions of the bill of lading and by laches. The facts alleged in the libel are that libelant was the insurer of certain cargo on board the lighter Orestina, that on or about September 7, 1949, at the port of Leghorn, Italy, the lighter was alongside the S. S. Exford of the American Export Lines, receiving cargo from that ship, that, in the course of unloading, a slingload of heavy steel was negligently caused to fall from the ship's tackle onto the lighter, necessitating repairs, salvage and other expenses, and that the insured cargo was compelled to pay a general average contribution of $615 to the lighter owner. The exceptive allegations of respondent which are before me add the statements that the insured cargo was shipped aboard the S. S. Exford for delivery at the port of Leghorn, Italy, and that the S. S. Exford arrived at Leghorn on or about September 7, 1949.

Libelant alleges in the libel that it is suing as subrogee of the owner of the injured cargo. Thus, for convenience, the

question may be treated as whether the action, if brought by cargo, would be barred either by the Carriage of Goods by Sea Act or by provisions of the bill of lading or by laches.

My conclusion is that the exceptions on the first two grounds are without merit and that the facts before the court on the third are insufficient to permit the determination of the questions raised so that all the exceptions must be overruled.

The parties have submitted these questions upon the face of the libel and the exceptive allegations. By common consent the exceptive allegations have been treated for the purposes of the motion as established. The motion thus has most of the characteristics of a motion for summary judgment.

The first point raised by cargo is that the suit is barred by the one year limitation in the Carriage of Goods by Sea Act, 46 U.S. C. § 1303(6).

■ If the point is taken literally it must be overruled out of hand. The Carriage of Goods by Sea Act does not apply of its own force to cargo after it has left the ship's tackle. See Mackey v. United States, D.C. S.D.N.Y., 83 F.Supp. 14, affirmed, 2 Cir., 197 F.2d 241; Gosse Millard v. Canadian Government Merchant Marine, [1927] 2 K. B. 432, 434; Lindsay Blee v. Motor Union Insurance, 37 Ll.L.R. 220; contra Goodwin, Ferreira v. Lamport & Holt, 34 Ll.L.R. 192.

In the Mackey case, however, the terms of the Act were applied, though the cargo had not reached the ship's tackle, because of a bill of lading clause that provided that the Act should govern before the goods were loaded and throughout the entire time that the goods were in the custody of the carrier. A similar clause appears as clause 1 in the bill of lading in this case so that the bill of lading incorporates by reference the terms of the Carriage of Goods by Sea Act as governing while the goods are in the custody of the carrier. Hence, if the Act is to apply at all in this case it will apply only as a collection of contractual provisions which the parties have incorporated in their bill of lading by reference. I shall thus interpret respondent's point as though it had

said that the claim was time-barred by the terms of the bill of lading incorporating the Carriage of Goods by Sea Act.

■ The parties' rights and liabilities from the time the cargo reached the ship's tackle until the time when it left the ship's tackle, or, as I shall hereafter express it, when it was in the ship's possession, were fixed by statute, the Carriage of Goods by Sea Act. It was obviously their general intention by contract to extend those rights and liabilities in both directions, from the period when the ship had possession, over the period when it had custody but not possession, which I shall call the non-possessive custody period. There is here also, however, an expressed specific intention, with respect to part of the non-possessive custody period, that the Carriage of Goods by Sea Act obligations assumed by contract for the rest of that period shall not apply. clause 12 of the bill of lading provides that all lighterage and use of craft in discharging cargo shall be at the risk and expense of the goods. On its face that would take part of the non-possessive custody period out of the scope of the Carriage of Goods by Sea Act. Was that, however, really the intention of the parties? If the Carriage of Goods by Sea Act had applied by its own force to the non-possessive custody period, Clause 12 of the bill of lading, insofar as it transferred from the ship to cargo the risk of damage arising out of negligence or fault, would have been void under section 3(8) of the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(8), 46 U.S.C.A. § 1303(8), and under section 1 of the Harter Act, 46 U.S.C. § 190, and, to that extent, the Carriage of Goods by Sea Act would have continued to apply even to the craft and lighterage period. It might be said that, when the parties agreed that the Carriage of Goods by Sea Act should apply to the non-possessive custody period, they intended that it should apply to the full extent to which it would have been effective if it had been in terms applicable to that period. I do not feel that that was their true intention, however. By agreeing that the Carriage of Goods by Sea Act should apply to the non-possessive custody period, the ship voluntarily assumed obli-

gations by general words. In another part of the bill of lading by specific words the ship was specifically relieved of certain of those obligations where craft and lighters were concerned. Indeed the part of clause 1 of the bill of lading which makes the Carriage of Goods by Sea Act applicable during custody contemplates such specific exceptions to that rule. It provides: "The provisions stated in said Act (except as may be otherwise specifically provided herein) shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the Carrier." Since the question is solely one of intention, the specific controls the general and the Carriage of Goods by Sea Act does not apply to the period when cargo is on a lighter. Thus the Carriage of Goods by Sea Act does not apply in this case. Since the Act does not apply the one-year limitation which is part of the Act does not apply.

Next comes the exception on the ground that the suit is barred by the bill of lading provision that "In any event the Carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after the delivery of the goods". The issue here is whether the injury was one involving the relationship between the parties set up by the contract of carriage in the bill of lading, in which case the contract limitation would apply, or was one involving some other relationship where the contract limitation had no application. See The Bellingham, D.C., 49 F.2d 442, 1931 A.M.C. 1019.

■■ I have come to the conclusion that the contract relations between the parties had come to an end when the goods were deposited on the lighter. Clause 12 of the bill of lading provides that the carrier "may discharge the goods directly they come to hand, at or onto any wharf, craft or place that the Carrier may select". Where the carrier discharges the goods onto a lighter of its selection at the port of discharge that satisfies its contractual obligation. The clause which permits that is one which measures the carrier's obligation, not one which exculpates the carrier from the consequences of a breach. The Portuguese Prince, D.C.S.D.N.Y., 209 F. 995; John Bonura & Co. v. United Fruit Co., 162 La. 53, 110 So. 86. Since the contractual relationship of the parties had terminated before the accident here the contractual limitation can have no effect on its consequences. The exception based on the contractual limitation must therefore be overruled.

■ Respondent's third contention is that libelant is guilty of laches and, in support of this contention, it urges in its brief the application of an Italian statute of limitations which, as quoted in the Martindale Hubbell Law Directory to which the brief refers, provides that actions against carriers (if shipment was made elsewhere than in Europe) must be brought within eighteen months. Without deciding whether this court should turn to Italian law on this issue of laches and accepting respondent's contention in this respect, there remains the question whether this particular limitation or other Italian limitation provisions dealing with other types of action applies. It will depend on whether this is an action against a carrier or an action for damages within the meaning of another Italian statute abstracted in Martindale Hubbell. The descriptions of these Italian statutes and the facts alleged in the pleadings do not provide a sufficient basis for me to apply them. Rulings on exceptions should not be made when the court does not have sufficient facts before it to determine the questions presented. Givaudan Delawanna v. The Blijdendijk, D.C.S.D.N.Y., 91 F.Supp. 663, 667. See also North American Smelting Co. v. Moller S. S. Co., D.C.E.D.Pa., 95 F.Supp. 71, 72. Aside from the Italian statute, the pleadings do not show laches. The exception on the ground of laches is overruled.

Exceptions overruled with leave to the parties to amend the libel and exceptions as they may be advised.