**GREEN TRUCK SALES, INC., Plaintiff,**

v.

**HØEGH LINES, Leif Høegh & Company, and Kerr Steamship Company, Inc., Defendants.**

Civ. No. 1264-57.

United States District Court
S. D. California,
Central Division.

Jan. 4, 1960.

Newell & Chester, by Robert M. Newell, Los Angeles, Cal., for plaintiff.

Lillick, Geary, McHose, Roethke & Myers, by L. Robert Wood, and Anthony Liebig, Los Angeles, Cal., for defendants The Høegh Lines.

No appearance for defendant Leif Høegh & Co. or defendant Kerr Steamship Co., Inc.

Department of Defense construction specifications and contracts. See 17 Comp.Gen. 37; 20 id. 18; id. 24; 31 id. 561."

TOLIN, District Judge.

Plaintiff, the owner of certain machinery and spare parts, contracted with defendants for carriage of these chattels from Aden, Arabia, to the Port of New York. The cargo was properly packed and delivered to the defendants' ship, Høegh Trader. Some of the large, heavy machinery was to be carried, and was carried, as deck cargo. The spare parts and smaller pieces of machinery were crated and stowed in the cargo holds of the vessel.

▮ Enroute to New York the ship encountered some exceedingly rough weather. A hurricane of sufficient magnitude to be named [1] influenced the heavy weather unfavorably and some of the deck cargo was washed overboard, taking with it a section of the ship's railing. Other items of deck cargo were damaged by the movement of the machinery as it left the space to which it had been firmly lashed. The Court finds that the damage to the part of the deck cargo which was damaged and the total loss of other deck cargo was caused solely by act of nature and plaintiff cannot recover from defendants for that loss.

▮ The crated cargo arrived safely in the Port of New York. Longshoremen then undertook to unload it. With minor exceptions (not here involved) it was lifted from the vessel by a derrick barge and loaded on board lighters.

The unloading occurred shortly before a scheduled strike of longshoremen. In the rush to clear the vessel before onset of the strike, cases of spare parts were dropped onto the lighters. Some cases were thereby broken open. Some heavy items were dropped onto cases which had been unloaded. Extensive damage resulted. Although some of the personnel testified to orderly, careful, uneventful unloading, it is apparent that they actually narrated the usual standard of practice employed in their calling and did not accurately describe the negligent unloading which actually occurred in this case. Said cargo was mishandled and the handlers were guilty of negligence. The evidence is overwhelming in favor of plaintiff upon this point.

Defendants assert that even if this is so, plaintiff is limited in recovery to $500 damages to any one case because of the provisions of the Carriage of Goods By Sea Act, sometimes designated "Cogsa".[2]

Neither the statutory language nor the adjudications support application of Cogsa to this case.

The definitional section of the Act provides, "The term 'carriage of goods' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship". The only goods in the instant case which were adversely affected during that time

1. "Greta"

2. Title 46 U.S.C.A. §§ 1300–1315. The $500 per package valuation provision is § 1304(5).

Section 1300 makes the Act applicable to all agreements " * * * for the carriage of goods by sea to or from ports of the United States, in foreign trade * * *."

Section 1301 defines the terms of the Act:

"When used in this chapter—

"(a) The term 'carrier' includes the owner or the charterer who enters into a contract of carriage with a shipper.

"(b) The term 'contract of carriage' applies only to contracts of carriage covered by a bill of lading or any similar document of title, insofar as such document relates to the carriage of goods by sea, including any bill of lading or any similar document as aforesaid issued under or pursuant to a charter party from the moment at which such bill of lading or similar document of title regulates the relations between a carrier and a holder of the same.

"(c) The term 'goods' includes goods, wares, merchandise, and articles of every kind whatsoever, except live animals and cargo which by the contract of carriage is stated as being carried on deck and is so carried.

"(d) The term 'ship' means any vessel used for the carriage of goods by sea.

"(e) The term 'carriage of goods' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship. Apr. 16, 1936, c. 229, § 1, 49 Stat. 1208."

were those lost or damaged because of the extraordinarily turbulent weather. Defendants have been absolved of responsibility in that regard.

The cargo which had been carried in the vessel's holds had been removed from the ship in sound condition. The damage thereto was not damage which occurred in carriage of goods by sea, but damage which resulted from mishandling in the unloading operation. The statute states "when they are discharged from the ship" as the termination of the time that Cogsa applies. The leading text writer on the subject, Knauth, says, "If shore side cranes or floating derricks are used, the moment (of discharge) would seem to be when such apparatus lifts the draft from the ship's hold or deck." [3]

The unloading method employed in the transaction in suit was exactly that. More impressive than the treatise are the many cases which apply the same rule, and hold that Cogsa is no longer in effect when the cargo has gone beyond the ship's own tackle. In Remington Rand, Inc. v. American Export Lines,[4] Cogsa was held not to govern after the cargo was loaded onto lighters. The Court stated:

> " 'Discharged from the ship' in Subsection (e), Section 1 of the Carriage of Goods by Sea Act is accomplished by the act of transferring cargo from the main carrier to a chartered lighter * * *. The lighters hired by respondent on which libellants' cargo was loaded at the time of the fire were not 'ships' within the purview of the Carriage of Goods by Sea Act * * *."

Also in point are In re Petterson Lighterage & Towing Corporation [5] ("But, that Act does not apply of its own force to the period after cargo has left the ship's tackle"), and Federal Ins. Co. v. American Export Lines [6] ("The Carriage of Goods by Sea Act does not apply of its own force to cargo after it has left the ship's tackle"). Compare for applications of this "tackle to tackle" test prior to loading, Krawill Machinery Corp. v. Robert C. Herd & Co.,[7] and Mackey v. United States.[8]

This is clearly a case in which sound cargo left the ship via the stevedores' tackle. Damage occurred when it was roughly handled by those in charge of the unloaders' equipment.

Damages must, therefore, be awarded plaintiff. The details of evidence with respect to the damage problem should be argued before the Court fixes the damages.

January 18, 1960, at 2:00 P.M., is set as the time for hearing that argument. Submission of Findings, etc. will await decision following the requested argument.

---

3. Knauth, Ocean Bills of Lading, Page 145 (1953).

4. D.C.S.D.N.Y.1955, 132 F.Supp. 129, 137.

5. D.C.S.D.N.Y.1957, 154 F.Supp. 461, 467, affirmed 2 Cir., 1958, 253 F.2d 952.

6. D.C.S.D.N.Y.1953, 113 F.Supp. 540, 542.

7. D.C.D.Md.1956, 145 F.Supp. 554, 562, affirmed 1959, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820.

8. D.C.S.D.N.Y.1948, 83 F.Supp. 14, affirmed 2 Cir., 1952, 197 F.2d 241.