**HOEGH LINES, Appellants,**

v.

**GREEN TRUCK SALES, INC., Appellee.**

**No. 17237.**

United States Court of Appeals
Ninth Circuit.

Jan. 9, 1962.

Lillick, Geary, McHose, Roethke & Myers, L. Robert Wood, Anthony E. Liebig, Los Angeles, Cal., for appellant.

Newell & Chester, Robert M. Newell, Los Angeles, Cal., for appellee.

Before BARNES and HAMLIN, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge.

The Hoegh Lines appeal from a judgment in favor of Green Truck Sales, Inc., for damages to spare truck and crane parts shipped on the HOEGH TRADER from Aden, Arabia, to the Port of New York.

Green Truck Sales, appellee, is a California corporation which deals in surplus heavy equipment throughout the world. In May, 1956, it purchased from agents for the British Petroleum Company, Ltd., at a fraction of their original cost, eight Lima cranes and seven heavy trucks, in addition to a large quantity of new and used spare parts. In negotiating with appellants' general agents, the Kerr Steamship Company, appellee offered to pay $34,000.00 for the carriage of the equipment and spare parts from Aden to New York. The appellants accepted the offer, but the freight charge was increased to $41,500.00 when two additional cranes and three more trucks were added. The freight was not calculated upon any existing or customary freight unit with respect to weight, measurement, or number of cases or packages.

The spare parts which are the subject of this appeal were packed in wooden cases prepared under appellee's direction and were carried below deck on the HOEGH TRADER. They were damaged while the vessel was being unloaded by the floating derrick, COLOSSUS, in the New York harbor. The floating derrick was employed by the HOEGH TRADER because the vessel's own tackle was incapable of handling the items of heavy equipment belonging to the appellee. The cases of spare parts were lifted from the hold of the vessel by the COLOSSUS and placed on lighters hired by appellee at appellants' suggestion. When the unloading was completed, the lighters were towed to Newark, New Jersey, for delivery of the cargo to appellee.

The District Court found that some of the cases of spare parts were dropped onto the lighters and that pieces of appellee's heavy machinery were dropped onto cases of spare parts already unloaded. As a result of this negligent unloading, many cases were broken open and the spare parts damaged or lost. The District Court held that the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.A. §§ 1300–1315, did not apply because the parts had been discharged before they were damaged, and that the vessel's liability was not limited to $500 per package or customary shipping unit under 46 U.S.C.A. § 1304(5). The court awarded plaintiff judgment for $76,010.00 based upon the difference between the reasonable

market value in New York of the parts as delivered and their value if undamaged, and upon the reasonable expenses incurred by the appellee in selling the damaged parts.

Appellants contend that the District Court's findings on liability and damages are clearly erroneous, and in any event the appellants' liability is limited to $500 per package by 46 U.S.C.A. § 1304(5).

## I.

■ The evidence and the inferences that must necessarily be drawn from it support the trial court's finding that appellants negligently unloaded the spare parts. There was testimony that cases of spare parts were dropped precipitously onto the lighters and that heavy machinery was dropped on cases of spare parts which had previously been loaded on the lighter JEANNE and that many of such cases were broken and their contents strewn about the lighter. The cargo appeared so badly damaged when the lighter reached Newark, New Jersey, that the pier superintendent refused to permit it to be unloaded until pictures of the cargo had been taken. These pictures showed numerous broken cases and damaged parts.

Appellants' testimony that there was no mishandling in the unloading operations and that there was little or no damage to the spare parts was not convincing. We cannot say that the District Court erred in refusing to believe it.

## II.

The Carriage of Goods by Sea Act defines the term "carriage of goods" as "the period from the time when the goods are loaded on to the time when they are discharged from the ship."[1] For this period the carrier is "subject to the responsibilities and liabilities and entitled to the rights and immunities set forth in sections 1303 and 1304" of the Act.[2] One such right is to have the carrier's liability for this period limited to $500 per package or customary shipping unit.[3]

■ We believe that cargo is not discharged within the meaning of COGSA when it is still in the process of being unloaded from a vessel onto a lighter. We reject the view of the trial court that each case of spare parts was discharged when it was first lifted from the hold of the vessel by the tackle of the floating derrick COLOSSUS. In Remington Rand v. American Export Lines, S.D.N.Y.1955, 132 F.Supp. 129, the court held that COGSA's exemption of a carrier from liability for fire did not apply to cargo which had been fully loaded onto a lighter for 24 hours. The court stated that discharge onto a lighter is complete "when the loading has been completed or while no other cargo is being loaded into the same lighter." 132 F.Supp. 129, 137. In considering when cargo is discharged, the court cited the English case of Goodwin Ferreira & Co. v. Lamport & Holt, Ltd., 34 Lloyd's List L.R. 192, 141 L.T.R. (n.s.) 494 (K.B.1929), which construed the discharge provisions of the English Carriage of Goods by Sea Act, which are identical in this respect with the American Act. There, a piece of machinery fell through the bottom of a lighter during the unloading of a vessel and caused water damage to libelant's cotton yarn. The court in holding that the yarn was damaged prior to discharge stated:

"In my judgment the discharge of these goods was not finished when they were put into a lighter when other goods were being discharged into the same lighter to make up the lighter load which was to start for the shore. When it is contemplated that these goods are to form the lighter load with other goods, the discharge of the goods themselves within the meaning of the Act of Parliament is, in my judgment, going on so long as other goods are being raised into the lighter and stowed into the lighter alongside or on top of them." 141 L.T.R. (n.s.) at 496.

---

1. 46 U.S.C.A. § 1301(e).

2. 46 U.S.C.A. § 1302.

3. 46 U.S.C.A. § 1304(5).

This decision was cited with approval in the more recent case of Pyrene Co. v. Scindia Navigation Co., 2 Q.B. 403 (1954), 2 All E.R. 158.

The only case which holds that cargo has been discharged although it is still being unloaded onto a lighter is Federal Insurance Co. v. American Export Lines, S.D.N.Y.1953, 113 F.Supp. 540. There, the shipper's libel was filed more than one year after the accident and the carrier contended that the action was barred by COGSA's one-year statute of limitations.[4] The court held that the cargo had been discharged and that the short statute of limitations in COGSA did not apply. This decision is inconsistent with both the Remington Rand and Goodwin Ferreira cases, supra, and, in our opinion, is an unduly restrictive interpretation of COGSA.

The other cases cited by the District Court and by the appellee are not inconsistent with our view that the spare parts on the lighter had not been discharged at the time they were damaged. In Re Petterson Lighterage & Towing Corp., S.D.N.Y.1957, 154 F.Supp. 461, involved an unseaworthy lighter which careened against the vessel and damaged the cargo on the lighter several hours after it had been fully loaded. Krawill Machinery Co. v. Robert C. Herd & Co., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), rejected a claim that COGSA limited a stevedore's liability. Mackey v. United States, S.D.N.Y.1948, 83 F.Supp. 14, held that because of a contract COGSA was applicable before the cargo had actually reached the ship's tackle. On appeal, the court affirmed solely on the ground that the cargo had been accepted for transportation and was subject to the ship's control. 2 Cir., 197 F.2d 241, 243.

Knauth, in Ocean Bills of Lading (1953), at p. 145, states that when substitute tackle is used, cargo is discharged as soon as it is lifted from the hold of the vessel. However, he cites no cases to support this statement. Knauth also states that a settled line of cases before and after the enactment of COGSA have held that a ship's liability terminates at the end of the ship's tackle, but the cases he cites are not in point.[5]

During the unloading of cargo from the HOEGH TRADER onto a lighter, some cases of parts were damaged when dropped on the lighter and other cases, already unloaded, were damaged when struck by other portions of the same cargo. In this situation, we hold that COGSA applies and that the carrier's liability is limited to $500 per package or customary shipping unit. We attach no significance to the fact that the lighters had been hired by the shipper and that substitute tackle was used to unload the vessel.

In view of this holding, we will not discuss appellants' contention that COGSA was applicable by contract to the period after discharge.

The judgment is vacated and the case remanded for a redetermination of the damages in accordance with this opinion.

The parties shall bear their own costs in this court.

---

4. 46 U.S.C.A. § 1303(6).

5. Smith v. Britain, S.D.N.Y.1903, 123 F. 176; The Portuguese Prince, S.D.N.Y. 1913, 209 F. 995; and Home Insurance Co. v. Philadelphia Piers, D.C.Pa.1951, 100 F.Supp. 348; all held that a vessel was not liable for water damage to cargo after discharging it onto a pier; The Monte Iciar, 3 Cir. 1948, 167 F.2d 334, held that COGSA was not applicable where several barrels of sherry first showed evidence of leakage a day or so after being discharged onto a pier; Bank of California v. International Mercantile Marine Co., 64 F.2d 97, 1933 A.M.C. 719 (2 Cir.) held that an ocean carrier was not liable for an admitted misdelivery of cargo because the shipper failed to comply with the notice provisions of the bill of lading; Austin Nichols & Co. v. Compania Transatlantica (The Lopez y Lopez), 218 App.Div. 660, 219 N.Y.S. 86, 1927 A.M.C. 275, held that a carrier was not liable for leakage of olive oil where there was no evidence of negligence.