**CATERPILLAR OVERSEAS, S.A.,**
Libellant,

v.

**S.S. EXPEDITOR and American Export Lines, Inc., Respondent.**

United States District Court
S. D. New York.

June 4, 1962.

On Reargument Nov. 14, 1962.

Bigham, Englar, Jones & Houston, New York City for libellant; F. Herbert Prem, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for respondent; M. E. De-Orchis and Clifford J. Brenner, New York City, of counsel.

METZNER, District Judge.

This libel seeks to recover damages to cargo. The libellant shipped two tractors to Tripoli on board respondent's vessel. When the vessel reached the Port of Tripoli, it discharged the tractors onto a lighter. Shortly thereafter the lighter listed to one side, and the tractors were cast overboard. The lighter was hired by respondent's local agent, but the charge for the lighterage was billed to the consignee. The consignee was neither consulted by the agent concerning the use of the lighter nor notified of the discharge of the tractors.

Respondent denies liability on two grounds. First, that pursuant to the provisions of the bill of lading it had made delivery of the tractors when they were placed upon the lighter. Second, that any loss was not due to its negligence.

The pertinent provisions of the bill of lading are contained in three separate clauses. Clause 1 provides that "The Carrier shall not be liable in any capacity whatsoever for * * * loss of or damage to the goods occurring while the goods are not in the actual custody of the Carrier."

Clause 4 provides that the carrier may discharge the goods onto a craft and when they are so discharged "they shall be at their own risk and expense" and "such discharge shall constitute complete delivery and performance under this contract".

Clause 12 provides that the carrier "may discharge the goods directly they come to hand, at or onto any wharf, craft or place that the Carrier may select" and that all lighterage and use of craft in discharging "shall be at the risk and expense of the goods."

It is contended by the libellant that the above clauses are exculpatory clauses violative of the provisions of the Harter Act (46 U.S.C. §§ 190, 191).[1] Since the cargo had left the ship's tackle, the Carriage of Goods by Sea Act (46 U.S.C. § 1300 et seq.) is not applicable. Federal Ins. Co. v. American Export Lines, 113 F.Supp. 540, 542 (S.D.N.Y. 1953) and cases cited therein. The Harter Act governs a carrier's obligations after the goods have been discharged from the ship's tackle and before they have been delivered. Isthmian S.S. Co. v. California Spray-Chemical Corp., 290 F.2d 486, 489 (9th Cir.1961).

The issue presented is, where was delivery to be made? In Federal Ins. Co. v. American Export Lines, supra, the court was dealing with a bill of lading identical in form to the one at bar. Judge Dimock said in that case, in discussing clause 12 of the bill of lading, that:

"I have come to the conclusion that the contract relations between the parties had come to an end when the goods were deposited on the lighter. * * * Where the carrier discharges the goods onto a lighter of its selection at the port of discharge that satisfies its contractual obligation. The clause which permits that is one which measures

1. The Harter Act provides that it is unlawful to insert in any bill of lading any clause relieving the carrier from "liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery" of property committed to its charge.

the carrier's obligation, not one which exculpates the carrier from the consequences of a breach. [Citing cases]. Since the contractual relationship of the parties had terminated before the accident here the contractual limitation can have no effect on its consequences." 113 F. Supp. at 543.

In The Portuguese Prince, 209 F. 995 (S.D.N.Y.1913) Judge Hough was discussing a clause in a bill of lading, similar to clause 12 in the case at bar, providing that the ship might unload onto hired lighters if necessary, but at the expense and risk of the owners of the goods. He said that the respondent in that case was entitled to a dismissal of the libel "unless the very ingenious argument advanced in respect of the Harter Act shall prevail." His opinion seems to be a complete answer to libellant's contention here, and the pertinent portion reads as follows:

"The language of the bill of lading under consideration has long been familiar to shippers and their counsel; it is the ordinary form of words by which a carrier is authorized to make a substituted delivery. The form of words long antedated the Harter Act, and a substituted delivery, whether by contract or usage, has long been known to the law. The draftsman of the Harter Act is presumed to have known that there was more than one kind of delivery, or more than one method of making delivery. The obligation of the statute is not to deliver in any peculiar manner, or any one manner, or any special manner, but only to properly deliver.

"The final question, therefore, is whether a reasonable substituted delivery based upon contract and strengthened by long custom is a proper delivery. It was a proper delivery before the passage of the Harter Act, and, during more than 20 years which have elapsed since that statute became effective, no case has arisen (so far as I know)

in which the second section of the act has been applied to these familiar words of the bill of lading." 209 F. at 997.

Neither Mackey v. United States, 197 F.2d 241 (2d Cir.1952) nor Morris v. Lamport & Holt, Ltd., 54 F.2d 925 (2 Cir.1931), cited by libellant, is in point here, since in both cases the court found that the damage occurred while the goods were in the custody of the carrier under the bills of lading.

This brings us to two of the other cases relied on by the libellant. In Isthmian S.S. Co. v. California Spray-Chemical Corp., supra, in which a petition for rehearing was granted and the original opinion adhered to (300 F.2d 41, 9th Cir. 1962), the court, in considering the application of the Harter Act, said that it was "essential to determine *what* a proper delivery is, and *when* such delivery is completed." 300 F.2d at 43. The majority of the court said that there was strong support for the existence of a maritime rule requiring delivery to a wharf, and that the parties understood that the obligation created between them required delivery to the wharf. The court said that its holding went only to the fact that "a carrier cannot relieve itself of liability occurring during such lightering or at any time before proper delivery." It went on to say that "the Harter Act seems to contemplate a *carrier liability* which continues up until 'proper delivery' has been effected, regardless of when the carrier's *obligation to transport* the goods ceases." 300 F.2d at 46. The court therefore held invalid a clause in the bill of lading which provided that the carrier may lighter the goods at the risk and the expense of the goods.

■ In the original opinion in that case the court was of the view that if proper delivery is completed as soon as the cargo leaves the ship's tackle then the Harter Act could never have become operative. However, I fail to see why it is not possible for delivery and discharge to coincide if the parties so agree. The scope of the Harter Act goes to the

obligations of the carrier within the limits of its contractual undertaking.

The concurring opinion indicated that the Harter Act does not deal with the scope of the carrier's obligation as to the place of delivery, but only prevents it from avoiding liability for negligence in delivery to such place as the carrier undertakes to make delivery. Judge Pope said that "there is no limitation in the Act upon the power of the parties to contract or to stipulate where delivery is to be made". 300 F.2d at 50.

Finally, we come to North American Smelting Co. v. Moller S.S. Co., 204 F.2d 384 (3d Cir.1953). In that case the goods were delivered from the deck of the ship onto the pier. Part of the shipment was removed by the consignee on one day, and on the following day some of the merchandise was found missing. The bill of lading provided that the merchandise was at the risk of the consignee as soon as delivered from the tackle at the port of discharge, and if the goods were not taken away the same day that they might be permitted to lie where landed at the expense and risk of the goods. Counsel for the carrier admitted on the argument that he could not rely on the bill of lading, which if applied literally would have disposed of the case in his favor. The court said that "This admission was well made in view of the language of the Harter Act." 204 F.2d at 386.

In view of the decisions in Federal Ins. Co. v. American Export Lines, supra, and The Portuguese Prince, supra, I fail to see why "This admission was well made". I find on the authority of these two cases that delivery was made to the lighter in conformity with the agreement of the parties, and the Harter Act is inapplicable under the circumstances.

The libel is dismissed. So ordered.

### On Reargument

The libellant has requested reargument of the court's decision in favor of the respondent rendered after trial. It has presented for the first time a theory upon which it claims that recovery could be based and which it claims it had previously overlooked. It is significant that the proctor for the libellant was the proctor for the successful party in one of the cases upon which it now relies. Remington Rand, Inc. v. American Export Lines, Inc., 132 F.Supp. 129 (S.D. N.Y.1955). In that case success was predicated upon a finding that the Carriage of Goods by Sea Act, known as COGSA (46 U.S.C. § 1300 et seq.), was inapplicable. Now the same proctor argues the reverse of that proposition and seeks a holding that COGSA is applicable, a proposition which in its trial memorandum it expressly denied (see pages 11–13). In fact, in order to show how sound that position was it referred to public statements to the same effect by the senior partner of the firm of proctors representing the respondent in this lawsuit. The court has examined the authorities and adheres to its original determination.

COGSA applies during "the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C. § 1301(e). Libellant's contention on reargument is that when discharge is made into a lighter, it is not complete as to the cargo of one shipper while cargo of other shippers is still to be placed in the lighter. Thus libellant argues that it is immaterial that all of *its* cargo had been placed on the lighter at the time of the accident, since it contends that other cargo was yet to be unloaded onto that lighter.

Under the facts of the instant case the court found that neither COGSA nor the Harter Act (46 U.S.C. §§ 190, 191) applied since discharge and delivery had been made when all of libellant's cargo had been placed upon the lighter.

The cases relied upon by libellant to sustain its theory are Remington Rand, Inc. v. American Export Lines, supra; Hoegh Lines v. Green Truck Sales, Inc., 298 F.2d 240 (9th Cir.1962), cert. denied, 83 S.Ct. 31 (1962); Goodwin, Ferreira

& Co. v. Lamport & Holt, Ltd., 34 Lloyd's List L.R. 192, 194 (K.B. 1929). Incidentally, the Remington Rand case had been cited in the libellant's original trial memorandum for the proposition that COGSA did not apply because it only covers cargo from "tackle to tackle." Upon rereading that case it is clear that libellant's original reading was correct.

In Remington Rand the vessel was discharging various cargoes at Bombay destined for different consignees. Some of the cargo was discharged onto the pier and some into lighters. Some twenty-four hours after discharge of the entire cargo destined for Bombay, a fire broke out on one of the lighters. This lighter held some of libellants' goods and some destined for other consignees. The court held COGSA inapplicable, since libellants' cargo had left the ship's tackle, and relied on Federal Ins. Co. v. American Export Lines, 113 F.Supp. 540 (S.D.N.Y.1953) and Mackey v. United States, 83 F.Supp. 14 (S.D.N.Y.1948), aff'd, 197 F.2d 241 (2d Cir.1952). The court in several places referred to "the discharge of libellants' cargo * * * having been completed." (conclusions of law Nos. 8 and 11). Since the lighterage had been arranged and paid for by the respondent, the cargo was found to have been within the "non-possessive custody period" referred to in the Federal Ins. Co. case, supra, and therefore the Harter Act was held applicable. In the instant case, lighterage was at the risk and expense of the goods.

The holding in Remington Rand therefore, insofar as COGSA was concerned, referred to a case where all cargo had been discharged, and that was all that concerned the court. The court did say at page 137 of 132 F.Supp. that discharge is accomplished by transferring the cargo to a chartered lighter "when that loading has been completed or while no other cargo is being loaded into the same lighter." However, this statement is clearly dictum in view of the fact situation before the court.

In the Hoegh case the libellant's cargo was still being discharged and therefore the case is not in point. The court referred to the Federal Ins. Co. case as being inconsistent with its holding and with Remington Rand. However, in the Federal Ins. Co. case the libellant's cargo had already been discharged and therefore on the facts it is not inconsistent with Hoegh or Remington Rand. As pointed out above the court in Remington Rand relied upon the Federal Ins. Co. case as authority for its holding.

The one case that does support libellant's position is the English case of Goodwin, Ferreira, supra.

In the Mackey case, libellants' cargo was on lighters that had been secured alongside the ship, pursuant to directions of the ship, and loading had been commenced. Because of this control the court found delivery had been made despite the fact that lighterage had been arranged for by the shipper. COGSA was held applicable because the bill of lading so provided. The facts are fully set forth in the opinion of the district court, supra.

Aside from the Goodwin, Ferreira case, supra, the pertinent authority in this country would appear to support the "tackle to tackle" rule and the inapplicability of COGSA where a shipper's consignment has been fully discharged, without reference to whether other cargo is still to be discharged.

On reargument the original determination is adhered to. So ordered.